## FANNIE PETERSON v. THE STATE.

1. INDICTMENT alleging that the defendant " on the 14th day of April, 1881, in Brazos county, Texas, did, with malice aforethought, kill Siddie Acco, a Mexican, by cutting him with a knife," is sufficient to charge the offense of murder.

2. SAME.— ASSAULT WITH INTENT TO COMMIT MURDER.— By special provision of the Code, the offense of murder includes all inferior grades of culpable homicide, and also assaults with intent to commit murder; wherefore an indictment sufficient to charge murder is also sufficient to sustain a conviction for assault with intent to commit murder. See the opinion *in extenso* on the question.

3. SAME — CHARGE OF THE COURT.— The court charged: " The offense if any would not be reduced to an aggravated assault, if you believe from the evidence that the defendant assaulted Siddie Acco with a knife which was a deadly weapon, with intent to kill." *Held* error in the use of the word " kill" instead of the word " murder." See the opinion on the principle.

APPEAL from the District Court of Brazos. Tried below before the Hon. W. E. COLLARD.

The opinion states the nature and result of the case.

Dr. Thomas Pugh testified for the State that about the time named in the indictment he was called in to see the

Mexican Siddie Acco, and found him suffering with a flesh wound across the upper lip, which severed the lip from one corner of the mouth to the other. There was also a wound in the cheek, exposing the bone, but the only wound requiring treatment was that on the lip. This wound had been filled by some one with spider web and soot. The witness saw the deceased on Sunday, the day after he was cut. He treated the wound until death ensued, which was on the fourteenth day after it was inflicted. In the opinion of the witness the death of the deceased was occasioned by this wound on the lip.

On cross-examination the witness stated that the deceased died with erysipelas. The wound was doing well up to the following Saturday, when the deceased had a severe chill, followed by a fever. Symptoms of erysipelas made their appearance for the first time while this fever prevailed, in the wound and nostrils, and rapidly extended to the face and head, causing death in five or six days. Erysipelas is a specific disease, and often exists independent of wounds. It is often produced by miasma, and exhibits itself by rigors or chills. There is malaria in the Brazos bottom where the Mexican lived and died. The usual term of duration of erysipelas in fatal cases is from five to six days after the disease appears. The usual seat of the disease is the face, and it usually attacks the mouth, nose and ears of the patient. The usual form of the disease is "facial erysipelas," so called because it locates itself in the face.

Re-examined he stated that the deceased was a small man, weighing from 90 to 100 pounds, but strong for his size. The defendant was a large woman and would weigh about 150 pounds. The witness supposed that she had greater strength than the deceased.

J. M. Pankey testified for the State that he lived on Col. Wilson's place and had charge of a convict camp. That as he was riding by Jack Murphy's place about eight

o'clock at night he heard the defendant and the deceased talking in front of the house, the woman telling the deceased to pay or give her something. The witness rode some 75 or 100 yards when he heard the woman say several times to the Mexican to pay or give her something or she would kill him. The witness rode back, dismounted, approached the parties, took hold of the woman, who had the Mexican by the throat, and pulled her loose. She struck at the Mexican several times with a knife, saying she would cut his d—d throat. It was quite dark and he could not see the knife well, but judged from the flash of the blade that it was three or four inches long. The witness heard the Mexican say several times " turn me loose." After the parties were separated the witness went into Murphy's house and saw the cuts on the Mexican's lip and cheek. The lip was split under the nose, and the cheek was cut to the bone. After the Mexican's wounds were examined, the woman said, " he struck me in the mouth." She showed her mouth, which was swollen. She raised her lip, and the witness saw blood between the lip and teeth, and the whole appearance of the mouth indicated that she had received a blow. The Mexican was small and the woman large. "The woman could hold the man as still as a mouse."

The deceased on the Saturday following the difficulty — just one week — rode on horseback, a distance of two and a half miles, to the justice's court where the case was being investigated, remained about one hour, and then rode home. The defendant lived at the house of Jack Murphy, in front of which, and some six or eight steps off, the difficulty occurred. The deceased was a hand working on the place, but he lived in another house.

Dr. J. W. Webb testified for the defense that he was a practicing physician and surgeon; that erysipelas is a disease which usually attacks the face, and that it exists independent of wounds or trausmatic influences. Mias-

matic poison is of itself sufficient cause to produce the
disease, and often does produce it. If the deceased was
cut as described across the upper lip, and the wound did
well for seven days, and the deceased rode a distance of
two and a half miles and back, when a chill and fever
ensued, and the erysipelitic inflammation set up for the
first time with the fever, then, in the opinion of the wit-
ness, death more likely resulted from the chill and fever
than from the wounds. Erysipelas in fatal cases gener-
ally runs its course in four or five days. As the deceased
had no symptoms of erysipelas until the fever set in, and
as the latter was sufficient to produce the disease, it was
more probable that the disease was thus caused.

J. Murphy testified for the defense that the Mexican
came to his house, where the defendant lived, about ——
o'clock at night, and the woman several times asked him
to pay her some money. She demanded pay several
times, and finally she and the Mexican went out of the
house together. After they got out of the house and
about six or eight steps distant, the woman several times
repeated her demand for payment of money. Finally the
woman said, " Siddie, don't you draw your knife on me.
You give me my money, or d—n you I will kill you."
The Mexican answered, "Don't you curse me, or d—n
you I will kill you." Immediately a blow was struck.
The witness was standing in his door when this occurred,
and could see their backs but could not distinguish them
from his position, though he could tell them from their
voices. The witness was occupied during the difficulty,
cooking his supper. Pankey came into the house with
the Mexican and examined his wounds. He was cut
across the upper lip, and on the cheek. After the Mexi-
can left, the defendant came in and said that the deceased
struck her in the mouth. Her mouth was swollen. She
raised her lip, and the witness saw blood about her mouth.
On the next morning her lip was very much swollen.

*Beall & Kemp*, for the appellant: The appellant submits the following grounds, assigned as error in the judgment of the court below, and asks a reversal of this case:

I. The indictment does not charge an "assault with intent to murder," and is not sufficient in law to support a conviction for that offense. The charging part of the indictment is as follows: "That about the 14th day of April, A. D. 1881, in Brazos county, Texas, Fannie Peterson did with malice aforethought kill Siddie Acco, a Mexican, by cutting him with a knife." The jury returned a verdict of guilty of assault with intent to murder, and assessed her punishment at confinement in the penitentiary for five years. *State* v. *Johnson*, 11 Texas, 22; *Johnson* v. *State*, 1 Texas Ct. App. 609; 1 Texas Ct. App. 640; Id. 749; 34 Texas, 646; Bish. Crim. Proc. 2 vol. § 541; Bish. Crim. Proc. 1 vol. §§ 506, 507.

Where the greater offense includes the less, still it is the rule of law that a person charged by indictment with the major, cannot be convicted of the minor offense unless the indictment contains every material averment necessary to constitute a good indictment for such minor offense; and the indictment in this case is not good for the offense of "assault with intent to murder," either at common law or under the statute. Laws 17th Leg. p. 61, form No. 3; Bish. Crim. Law, vol. 1, § 809; Bish. Crim. Proc. vol. 1, §§ 89, 112, 417, 418.

The court erred in charging the jury, "That the offense, if any, would not be reduced to an aggravated assault, if you believe from the evidence that the defendant assaulted Siddie Acco with a knife, which was a deadly weapon, with intent to kill."

The proof shows that the defendant was struck in the mouth, causing pain and bloodshed, and that she inflicted the wound immediately after being struck by the Mexican. *Thomas* v. *State*, 40 Texas, 36; 41 Texas, 501; 43 Texas, 382; 1 Texas Ct. App. 640.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. The indictment charges that the defendant, "on the 14th day of April, 1881, in Brazos county, Texas, did, with malice aforethought, kill Siddie Acco, a Mexican, by cutting him with a knife." Upon this indictment the defendant was convicted of an assault with intent to murder Siddie Acco, and her punishment was assessed at confinement in the penitentiary for five years.

In the case of *Dwyer* v. *State (ante,* p. 535), decided at the present term, we held that an indictment for the crime of murder in the above form was sufficient, as it alleges every act and fact constituting the offense.

It is now further objected to this form of indictment that, notwithstanding it may be sufficient to charge murder, yet it will not be sufficient to support a conviction for assault with intent to commit murder. While the argument of counsel for defendant, in support of this contention, was very ingenious, we think it paradoxical. It is in effect a denial of the axiom that the greater includes the lesser. In murder there is always an assault to commit murder. When an indictment charges murder, it necessarily embraces an assault to commit murder. The Code of Criminal Procedure, art. 714, provides that murder includes all the lesser degrees of culpable homicide, and also an assault with intent to commit murder. It appears to us that this article of the Code is a conclusive answer to the position assumed by the learned counsel for defendant. We have carefully examined the authorities cited by them upon this question, and we do not think they conflict with the conclusion we have arrived at, and that is, that in charging murder all the elements which make the offense of assault with intent to murder are necessarily included.

The court, in its charge to the jury, when explaining

the difference between an assault with intent to murder, and an aggravated assault, uses this language: "The offense, if any, would not be reduced to an aggravated assault, if you believe from the evidence that the defendant assaulted Siddie Acco with a knife, which was a deadly weapon, with intent to kill." The charge of the learned judge as a whole was a very able, clear and exhaustive embodiment of the law of the case, but we are of the opinion that the extract above quoted is erroneous; and, having direct reference to a most material issue in the case, it would be most likely to mislead the jury to the injury of the defendant's rights. The error in the paragraph quoted is this,— it concludes with the word *kill* instead of the word *murder*. The defendant may have assaulted Siddie Acco with a knife — a deadly weapon,— and with intent to kill him, and yet under circumstances which would, in case the death of Acco had ensued from the assault, have reduced the homicide to manslaughter. There exists an intention to *kill* · in manslaughter, and therefore, notwithstanding the assault in this case may have been made with the intent to *kill*, that would not necessarily make it an assault with intent to *murder*. The intent to kill may have existed without malice, and malice is as essential in the offense of an assault with intent to murder as it is in murder itself.

It is clear, therefore, that, although the jury might have believed from the evidence that the assault was made with a deadly weapon, and with intent to *kill*, they might still very properly acquit the defendant of the charge of assault with intent to murder and find her guilty of an aggravated assault, provided the evidence did not satisfy their minds, beyond a reasonable doubt, that the homicide, if accomplished, would have been murder. But the charge referred to instructs them plainly and positively to the contrary, and, while we do not doubt but that it was an accidental mistake in the

otherwise model charge of the learned judge, we think it was a most vital one to the defendant, and one which demands a reversal of the judgment.

*Reversed and remanded.*